DWIGHT FOSTER & others *vs.* BOARD OF PARK COMMISSIONERS
OF THE CITY OF BOSTON.

Suffolk. March 9. — May 6, 1881. COLT, ENDICOTT & DEVENS, JJ., absent.

The board of park commissioners, appointed under the St. of 1875, c. 185, has
power to amend its record of an order laying an assessment, if at the time
of the amendment the board consists of the same persons who were members
at the time of the making of the order, although one of them has been mean-
while reappointed upon the expiration of his first term of office.

The St. of 1875, c. 185, authorized a board of park commissioners to locate and
lay out within the city of Boston a public park, to take such lands as the board
should deem desirable therefor, and to assess upon any real estate in Boston,
which, in the opinion of the board, should receive any benefit and advantage
from such location and laying out, beyond the general advantages to all real
estate in the city, "a proportional share of the expense of such location and
laying out," the entire amount so assessed upon any estate not to exceed one
half of the amount adjudged by the board to be the whole benefit received
by it. *Held*, that the statute authorized an assessment only for expenses either
actually paid or incurred, and not for estimated expenses.

GRAY, C. J. This is a petition for a writ of certiorari to
quash an order of the board of park commissioners of the city
of Boston under the St. of 1875, c. 185, assessing lands of the
petitioners and others for special benefits received from the lo-
cating and laying out of a park.

By §§ 1, 2, of that statute, the mayor of the city of Boston
was authorized, with the approval of the city council, forthwith
to appoint three commissioners, to hold office until the expira-
tion of two, three and four years respectively from May 1, 1875,

and in every year after 1876 to appoint a commissioner to continue in office for three years from the first day of May, these commissioners to constitute a board of park commissioners, and any vacancy occurring therein to be filled in the same manner.

By § 3, "said board shall have power to locate within the limits of the city of Boston one or more public parks; and for that purpose, from time to time, to take in fee, by purchase or otherwise, any and all such lands as said board may deem desirable therefor; or to take bonds for the conveyance thereof to said city; to lay out, improve, govern and regulate any such park or parks, and the use thereof;" and generally to do all acts needful for the proper execution of the powers and duties granted or imposed by the statute: "provided, however, that no land shall be taken, or other thing involving an expenditure of money done, until an appropriation, sufficient to cover the estimated expense thereof, shall have been made by a vote of two thirds of each branch of the city council of said city."

By § 4, the board shall, within sixty days of the taking of any land under the statute, file a description thereof in the registry of deeds. By § 5, the board shall estimate and determine all damages sustained by the taking of land, or other acts of the board in the execution of its powers; but any party aggrieved by such determination may have his damages assessed by a jury in the Superior Court, as in the case of "damages sustained by reason of the laying out of ways in the city of Boston." By § 6, the fee of all lands taken or purchased by the board shall vest in the city of Boston; the city shall be liable to pay all damages assessed or determined as provided in § 5, and all other costs and expenses incurred by the board in the execution of its powers; and is also authorized "to take and hold in trust or otherwise any devise, grant, gift or bequest that may be made for the purpose of laying out, improving or ornamenting any parks in said city."

By § 7, "any real estate in the city of Boston, which in the opinion of said board shall receive any benefit and advantage from the locating and laying out of a park under the provisions of this act, beyond the general advantages to all real estate in the city of Boston, may, after like notice to all parties interested as is provided by law to be given by the street commissioners of

the city of Boston in cases of laying out streets in said city, be assessed by said board for a proportional share of the expense of such location and laying out: provided, that the entire amount so assessed upon any estate shall not exceed one half of the amount which said board shall adjudge to be the whole benefit received by it."

By § 8, "no assessment shall be made as provided in the preceding section, except within two years after the passage of the order, the execution of which causes the benefit for which the assessment is made." By the subsequent sections, all assessments made under this statute shall constitute a lien upon the real estate so assessed; and any party aggrieved by any assessment may have the amount of the benefit received by his estate assessed by a jury, as in the case of the laying out of ways in Boston.

In 1877, by orders of the city council, passed by vote of more than two thirds of each branch, the park commissioners were authorized to expend the sum of $450,000, or so much thereof as might be required, to purchase one hundred acres of land or flats within certain boundaries in the Back Bay, so called; and the petition for a writ of certiorari alleges that thereafter, and before December 27, 1879, such lands and flats were purchased by the park commissioners, and conveyed to the city by deeds duly recorded and paid for by the city.

On December 18, 1879, the board of park commissioners passed an order, reciting that, "in the opinion of this board, it is desirable that a parcel of land belonging to the city of Boston" (then follows a description of the land and flats aforesaid) and certain parcels owned by other parties (likewise described) "should be taken and laid out as a public park," and directing notice to all persons interested "that this board intend to take the lands before mentioned, and lay out the same as a public park," and to assess a portion of the expense thereof upon the estates that will be benefited by "the said proposed laying out of said park," and that any objections "to said taking and laying out or to said assessment" would be heard on December 26, 1879.

On the day so appointed, a hearing was had accordingly, at which no one appeared to object to the taking and laying

out as a public park of the lands described in the notice, but objections were made by several parties to assessments of betterments; and, on December 27, 1879, the board of park commissioners passed the following orders for taking the lands for a public park and assessing betterments therefor:

First. An order stating that the commissioners, "by the authority conferred upon us by the said act, and by the city council of said city of Boston, which has made the appropriation necessary to cover the estimated expenses of our action in the premises, have taken, and hereby do take and create as a public park or parks, the following described parcels of land, with all the buildings and fixtures thereon, situated in the said city of Boston, viz." (then followed descriptions of the lands) "to have and to hold the said several parcels of land to the said city of Boston, its successors and assigns, to its and their sole use and benefit forever, agreeably to the provisions of said act."

Second. "Whereas, pursuant to an act of this board passed December 27, 1879, a public park or parks was located and laid out in the city of Boston at an estimated expense of $465,226.10; and whereas, in the opinion of the board, the estates named in the foregoing schedule have been benefited by the location or laying out of said park or parks, and due notice has been given of the intention of the board to assess betterments thereon; it is therefore hereby voted, that the estates named in the schedule be, and they hereby are, respectively charged with the sums therein severally set against them, such sums so assessed not exceeding one half the amount of the adjudged benefit to the estates by the said location and laying out."

The schedule prefixed to the last order is entitled "Schedule of assessments made by the board of park commissioners upon the estates benefited by the locating and laying out of a public park or parks in the city of Boston, as authorized and enacted by a resolve and act of the board, passed December 27, 1879, the expense of which was estimated at the time of the passage of said location and laying out at $465,226.10." The schedule consists of five columns, successively showing the number of each lot on a plan, its approximate area in feet, its owner, its boundaries and the amount assessed upon it; and includes lands owned by the petitioners.

The park commissioners, in the answer originally filed by them to the petition for a writ of certiorari, stated that, in making the several assessments upon the estates described in the schedule, they assessed upon each estate one half of the amount which the board adjudged to be the whole benefit received by it from the locating and laying out of the park. They afterwards amended their record accordingly, by inserting in the schedule of assessments a column showing the whole amount of benefit and advantage that these estates had respectively received by said location and laying out, as then adjudged, by which it appeared that this amount was, as to each estate, exactly twice the amount of the assessment upon it. And upon motion they were allowed to amend their answer by making the amended record part thereof. The same persons constituted the board of park commissioners at the time of this amendment as at the time of making the order laying the assessment complained of, although one of the commissioners had meanwhile been reappointed upon the expiration of his first term of office. The amendment of the record was within the powers vested in the board. *Andover* v. *County Commissioners*, 5 Gray, 393. *Gloucester* v. *County Commissioners*, 116 Mass. 579. *Halleck* v. *Boylston*, 117 Mass. 469. If the order in its original form was defective for not showing that the board had adjudged the whole amount of the benefit received by each estate named in the schedule, the defect is cured by the amendment.

But more serious objections have been suggested to the validity of that order. It is contended that, in the provision of the statute authorizing the commissioners to assess estates, receiving special benefit "from the locating and laying out of a park under the provisions of this act," for "a proportional share of the expense of such location and laying out," the words "laying out" are not used as synonymous with "locating," nor in the same sense as in the statutes concerning the laying out of highways, but are used in the sense in which those words are used when speaking of the laying out of a garden, including not merely the defining of the boundaries on the surface of the ground, but also such changes in the surface as are necessary to adapt the land to the purpose intended; and that the park must have been so laid out, and the expense of the location and

laying out of the park must have been actually incurred and paid, before any assessment can be made upon the estates specially benefited thereby.

These questions cannot be decided without more consideration than, in the pressure of other duties since this case was argued, we have been able to give to them. The provisions of the statute are somewhat vague and obscure; and it is possible that further legislation may be found requisite to carry out the intentions of the Legislature. But the case as now presented does not require a determination of these questions, nor of the question whether successive assessments can be laid from time to time until the park is completed.

It is sufficient to say that we are satisfied that the statute does not authorize any assessment to be laid, except for the amount of expenses which have either been actually paid, or have at least been so far incurred that the city is under a liability from which it cannot escape to pay them. Section 7 authorizes an assessment to be made only "for a proportional share of the expense," not of "the estimated expense" for which the city council is required by § 3 to make an appropriation. If the owners of adjacent lands should be assessed for an estimated expense, and the park should afterward be constructed at a less expense, or never be constructed at all, no provision is made by which they can recover back the sums assessed or any part thereof.

If, therefore, the assessment complained of is for expenses which have neither been paid nor incurred, the writ of certiorari must issue. But in the present aspect of the case the proper order will be that the petition stand for further hearing before a single justice, so that the respondents may have an opportunity to show that the city has paid or become liable for the amount assessed.                    *Ordered accordingly.*

*D. Foster & H. D. Hyde*, for the petitioners.

*H. W. Putnam*, for parties having similar interests, was permitted to file a brief in support of the petition.

*E. P. Nettleton*, for the respondent.